United States v. Hart. That's the case. If you are prepared to move forward at this time, we will start out with you, Mr. Carpenter. We're asking you to follow the Ninth Circuit's decision. A prior conviction does not qualify as a 22-52 predicate. If it covers consistent evidence with a 17-year-old, based solely on that right-line move... I don't know if anybody else is having a problem, but I... We can't hear you. Yeah, Mr. Carpenter's cutting in and out, at least from my perspective. It might help to step forward, Mr. Carpenter. That's what, in the prior case, helped. I hope that does with you. Sure, we'll give it a shot. Can you hear me any better now? Slightly, but if you'll speak up, maybe that might help. But if you've got your mic to you, that's important. Okay. So, in the prior case, you followed the Ninth Circuit's decision in the Peacock's case. Is this better, or is it still the same problem? For me, it sounded like when you stepped back, it got to where I couldn't hear. I don't know about Judge Wynn and Judge Thacker. I'm sorry. No, I can't. I couldn't either. Okay. Well, I apologize for that. Well, it's good right there. Wherever you are right now is good. Okay. Sure thing. I will stay right here. So, we're asking you to follow the Jaycox case and to hold that a prior conviction does not qualify under Section 2252 if it covers consensual sex with a 17-year-old based solely on the aid of the participant. That bright-line rule is consistent with both protections that stand by the precedent, and it avoids the significant problems that arise under the government's union statute. What about the fact that the statutory definition of minor is 18 under 2256-1, and doesn't that apply to the current offensive conviction here, 2252-A? So, Your Honor, I think the definition in 2256 is a bit of a red herring in this case because our statutory argument is based on the term abusive and what that statutory term means. But don't you have to start with how minor is defined in the statute? Abusive sexual contact of a minor and a minor is defined as under the age of 18? Yes, Your Honor, and we have no quarrel with that definition applying. Our focus is on what counts as abusive, and we think that the reading that the government has is that it is not abusive entirely, because it would, and this is the point that Judge Easterbrook makes in the Osborne case, which is that if Congress had intended to cover every feat of sexual conduct with someone under the age of 18, then it would have said so rather than using the word abusive. So whatever the word minor means and whatever the word relating to means, they cannot mean something that renders the word abusive entirely meaningless, and so that is... Well, but Mr. Carpenter, just to follow up on that, you know, it seems to me that the Ninth Circuit, and with all due respect to them, you know, takes the Supreme Court's Quintana case way further than that case says. I mean, that case, you know, states the rule that, you know, if in determining, in interpreting a statute that doesn't define minor or doesn't define sexual abuse with a minor, as you point out in the consensual situation, you know, it means someone under 16. I don't, as Judge Sacker points out, in our statute, we actually have the minor defined, and yeah, I just didn't see anything, or maybe I missed it. Point me to where in Quintana that rationale is intended to apply to statutes where the minor is defined. Sure. So I don't know that Quintana necessarily is intended to apply, but I think beyond that particular context, but I do think the definition of the word abusive will apply anywhere that the word abusive is used. That is the same thing that this Court did in Ron El Castaneda, which involved also a definition of abuse in a different context. So you read, am I correct, that the determination, your focus on abusive, as I understand it, means if you use that, focusing on that term, that can only apply in a statutory rape context to someone under 16, and that would have to come from the Quintana case, right? Or is that just your argument in general? So, I mean, the Quintana case certainly confirms our argument. Our view is that the word, or the phrase, abusive sexual conduct involving a minor has to be defined either by reference to the generic definition of that term, or by the federal counterpart definition, which is in 2243. In Lockhart, the Supreme Court reserved the question of which of those two applies. Under either one, though, it excludes conduct with the minor who is 16 or over. But I don't understand why we would be looking at 2243 or any other statute for the definition of minor when this statute defines minor. So I think it's important to step back and look at why 2256 is defining minor as under age 18. That is in the context, this is a specific provision regulating the production of child pornography. And while there is, I think, variation, obviously, among the states on the age of consent with respect to statutory rape provisions, I think it's uniform across the that 18 is the threshold for that purpose. And so I think that certainly this piece of the provision also uses the term minor, but minor is used many other times throughout the statute where it is defined specifically by 2256. The reference, there's no particular reason to think that 2256 was also meaning to define it for this particular provision, which is, again, of the one time among many that the word minor is used. So this is a very focal point in the case, and that is that definition of minor is there. But when you look at it, what the definition of minor here is relevant to the question of whether the Tennessee law is categorically overbroad as to the meaning of the word minor. But it is relevant for determining the meaning of abusive in this context. So rather than, as binding precedents dealing with the sexual context to the abusive, based solely on the petitioner's age, the victim must be, at least in your perspective, under the age of 16. That's right, Your Honor. And so you have to define abusive somehow. And other courts that have done it, the Ninth Circuit did it, and Jaycox, in this exact same statute. So this, if the court were to adopt the government's reading of 2256 applies here, creating a direct circuit split with the Ninth Circuit on this very question. And I think the Ninth Circuit got it right. If you look at the analysis in the Ninth Circuit, they cite the exact same standard that this court cited in the Colson case, which defines this relating to when you put that standard by itself is very general. So I'm sorry, but I don't have a substantive question, but I can't hear you again, Mr. Carpenter. I hate that you're having to do that, but we just aren't hearing you. Okay. I think as long as you kind of lean forward, it might be uncomfortable. We can hear you, but when you back up, we cannot hear you. Okay. Yeah. I'm sorry about that. But let me at least point one, maybe we can get agreement that if we're talking about the categorical approach, if I'm understanding your argument correctly, you're saying for minor, it is a categorical match. For abuse, it's not. Sorry. I may have missed that part of that. That in terms of when you're looking at it from a categorical approach, that if you use minor, it is a categorical match, but for abuse, it's not a categorical match. And we're focusing on the meaning of abuse here, because that is the basis upon which you get to this enhancement. That's right, Your Honor. I think our point on minor, it would mirror what the Supreme Court said in Esquivel-Quintana, which is that the precise age threshold varies depending on the context. So Quintana did not say that the word minor means under 16 in all contexts and in all where it is a statutory rape offense based solely on the age of the participant. In that scenario, it's 16. But the Supreme Court specifically reserved the question of whether that same age threshold applies in other circumstances. And the example it gave was an offense that prohibits sexual conduct not based on age, but instead based on a special- In Quintana, there wasn't an underlying statutory definition of minor like we have here. Correct? In Quintana, they had to look elsewhere, looking for dictionary definitions. There wasn't a statutory definition for the offense conduct like we have here. Your Honor, that is correct. But the analysis that Quintana did was really focused, and again, I think it's the same for the Ninth Circuit when it looked at this. It's really focused on the question of, is this conduct abusive or not? And so what we think the analysis here, under point 253, is that a statute can relate to abusive sexual conduct only if the most the other elements of the offense. And so I think that the two Ninth Circuit cases they possibly cited in the Sullivan case that preceded it show how that standard works in practice. So in Sullivan, there was a mismatch with respect to these other elements, the mens rea element in particular. But the court said, we are going to put it in under 2252 and the relating to standard because everything, even the most innocent conduct, involves the core element of abuse. But then in Jaycox, that wasn't true. The most innocent conduct in Jaycox was not abusive. And for that reason, the court held that the relating to standard wasn't satisfying. We think that's a lot more content into this statute. The first problem that we're reading is the text. Again, you need to come back to your mic. Go ahead. I'm sorry. So again, the first problem with the government's reading is the textual one, that it reads the word abusive entirely out of the statute. The second problem... Well, we've defined abusive sexual conduct involving a minor as the perpetrator's physical or non-physical misuse or maltreatment of a minor for a purpose associated with sexual gratification. Exactly. So go from there. Certainly. The most innocent conduct here simply doesn't satisfy that definition because a 17-year-old is perfectly capable of consenting to sexual activity according to the vast majority of jurisdictions and according to federal statute as well. So no matter what you look to to give content to the word abusive, the generic definition or the federal counterpart, the most innocent conduct covered here isn't abusive. The second problem I point to with the government's test is that it's not administrable because it doesn't identify any limiting principles or provide any guidance to district courts or litigants for how to analyze this statute. And I would point in particular to page 30 of my friend's brief where he argues that these thumb relations being satisfied because, quote, much of the conduct would be considered abusive. But that begs a lot of questions. How much is much? Is it 90 percent? Is it 50 percent? And how do we figure that out? Do we have to do an analysis of the cases that have been prosecuted to figure out which ones were abusive and which were not? That gets us right into the Johnson relied upon in invalidating the procedure. It also brings us to the problem in Malawi that the Supreme Court identified, which is that taking to their extreme the word relating to has no stopping point at all. But we think that if you focus on the most innocent conduct and require that it have the core element of abuse presence, then it solves this problem. That reading gives effect to the statutory text, to each piece of it relating to peace as well as the word abusive. And it has this report and litigants who are confronting these. The third Mr. Mr. Carpenter, and if I want to I think you were addressing this, but I just want to make sure I hear it. Are you saying that in order to satisfy the relate to language, whatever the conduct that relates to it must also be abusive? Is that I think I heard you saying it that way. Is that what you were saying? Yes. So I think the way that the Ninth Circuit applies this test is that the most innocent conduct has to include the core element of abuse, even if there is a mismatch on the other elements. So for example, in Sullivan, there was a mismatch with respect to the mens rea element. The mens rea element was over broad under a traditional categorical approach. It would not have qualified. So it brought it in on that basis. But yeah, our position is that the core element of abuse has to be present, even in the most innocent conduct. And here it's not because the most innocent conduct here is the consensual activity of a 17-year-old. And it's under either of the definitions, generic or federal, that conduct is not abusive. Before my time is up, I would spend just a minute on the supervised release procedural error issue. I think that if the court agrees with us on the statutory minimum, there is no need to get there because it would be a de novo resentencing. But if you do reach it, a fairly straightforward application of discourse decisions in Ross and Arbol and McMiller would dictate a statutory remand in this case as well. Thank you, Mr. Copper. You have some time reserved in rebuttal, so we'll come back to you, Mr. Enright. Good to see you again. I'm going to turn my camera off and see if I can find a way to fix any of our technical issues. All right. Mr. Enright, good to see you again, please. It's your time. Thank you, Your Honor. May it please the court, Anthony Enright, for the United States. The district court properly found that Mr. Harden's Tennessee statutory rape conviction is a conviction relating to abusive sexual conduct involving a minor. As Judge Thacker alluded to, this court has already defined that term in a binding decision in Colson. You look at the minimum... Define what term are you referring to? Define the term relating to abusive sexual conduct involving a minor. Perhaps it's more than one word, but... Yeah, that's several terms. Yeah. I'm not so sure it boils down to simply just defining that entire sentence. I could see you going to deal with the relating to the abusive conduct or the minor. And what it seems to me, just to cut to the chase here, it seems to me you have a statute that does define minor, but the problem here is that this particular one deals with abusive conduct relating as to a minor. And so when you're dealing with abusive conduct, if this federal statute says, well, you can consent once you're 16, then once you're 16, there's no such thing as abusive conduct for those who can consent. And we're talking about a categorical approach here. So that's the conundrum we've reached here with that. And then when you look at the, maybe the Lynch case is what I would call it, Supreme Court decision dealing with the relating to, it sort of cabins that definition somewhat there. I probably would have more of a problem with the relating to than I would the abusive aspect, but for the Lynch case, which is a Supreme Court case, but go there. And I didn't mean to cut you off, but you gave that broad phrase that I don't think we're quite there, but if you think it is, go ahead. Well, the court has answered, I think, many of your questions before. So in Colson, what it said, abuse is physical or non-physical misuse or maltreatment of a minor for a purpose associated with sexual gratification. And in D'Isabera, it took that term from D'Isabera, defining sexual abuse of a minor in the guidelines. What D'Isabera said is we reject any argument that you need to and that it's for the purpose of sexual gratification. That's a broad statement. This court has repeated that a few times. And when you have a state statute that says that is not a proper use of a minor, you cannot use a minor for this sexual purpose, then it's going to fall within that definition. In both D'Isabera, or I'm sorry, in both Esquivel Cantana and Rangel Castaneda, the court looked at the term minor in the context of the guidelines and the INA and said, what does minor mean in this context? They said it's undefined and it's a term that varies depending on the context and looked at dictionaries, looked at what other states do, looked at other provisions in the federal code. This court doesn't need to do that because minor is defined for every purpose in chapter 110. But to get to misuse, you need some sort of abuse, right? Your Honor, you do. And in this case, the conduct is abusive because it is under a certain age, the age of 18. And that's what this court did in Colson. The abusive conduct in Colson- When you're talking about statutory rape, you're talking about a question of when consent can be given. And if consent can be given at 16 under the federal statute, as opposed to the Tennessee statute, you've got a problem. No, Your Honor. Sorry. Go ahead. Okay. I don't want to- Please answer Judge Wynn's question. No, no. Let me just address the statute. The federal statute is a different statute that uses a different term. 2243 defines sexual abuse of a minor, a different term, not abusive sexual conduct involving a minor. And this court has already decided- And that's not the statute we're dealing with here, right? We're dealing with 2252A here. Correct, Your Honor. And 2243 is in a different chapter. It's not the chapter where the term minor is defined to mean persons under 18. And statutory rape, consent is not a defense to statutory rape, is it? Consent is not ordinarily a defense to statutory rape. And, Your Honor, what I would note is- That's sort of the point of statutory rape. Absolutely, Your Honor. But you do need to- What about Jaycox? I mean, Jaycox goes as- Ninth Circuit's already decided this the other way. So what would you have us do with Jaycox? I would have, Your Honors, not follow it because it's inconsistent with this court's finding precedent. Jaycox applies the elements of 2243 as a guidepost. It's defined abuse as encompassing that's harmful emotionally and physically. Those are two things this court has rejected in Colson and D'Isabera. Those are not doctrines this court can adopt without conflicting with its prior precedent, even if it wants to. And it defines relating to in a very narrow way. It says relating to will resolve issues at the margins. What this court said is that relating to is a term that Congress chose to ensure- This is a quote from Colson. That individuals with a prior conviction bearing some relation to abusive conduct involving a minor receive enhanced minimum and maximum sentences. And Colson- But Mr. Carpenter brings up the point that relating to, as we've defined it in our precedent, has really no stopping point or limiting principle. And neither, perhaps, does the government's argument that might seem to make every statutory rape just per se an enhancement, a big enhancement. There's two parts to that. One is, I think, the idea that relating to is broad. I don't dispute that. That's what Malouly v. Lynch said. Malouly v. Lynch did not say there's anything wrong with a statement being broad. And in fact, Malouly v. Lynch suggested that relating to would mean something like, in the context of the statute it was approaching, relating to would mean any statute that covered the subject, which in that in deportation statutes there had usually been a specific link to a specific drug prohibited by the federal statute, they would use a narrower interpretation of relating to than its ordinary meaning. If anything, Lynch confirms that relating to's ordinary meaning is broad, and this court the question if that view of relating to would encompass any statutory rape. And if the answer is that yes, is there any problem with that? The answer is probably yes. And the reason isn't for any, I don't know, any is maybe too broad, but I think certainly when you're talking about a minor defined the way, or statutory rape where minor is defined as a person under 18, because that's specifically how minor is defined in the relevant federal statute. But I don't want to suggest there's no limiting principle. This court already rejected the idea in Spence that, for example, a general assault statute would apply. What you need, I don't think this court needs to go that age element that makes it abusive because of the age of the defendant. And to Judge Wynn's point, the idea that it has to be abusive through conduct defined without reference to age, in other words, it has to be abusive for reasons other than the victim's age, I think is inconsistent with the statute because the element immediately preceding the language we're trying to look at is sexual abuse. So to follow up on the questions asked, you know, the way I'm hearing you is, under your interpretation, even a sexual encounter with consent with all individuals under 18 would qualify. And if you do that, that reads abuse out of the statute. I mean, you go back to the Quintana case, and the court states very specifically, the generic federal definition of sexual abuse of a minor requires that the victim be younger than 16. And so it seems to me that what you just mean is you're talking about sexual encounters with all minors. And that's not what we're dealing with here. No, Your Honor. So the statute at issue in Esquivel-Quintana, the court was specifically looked at the definition of minor. It said, what does minor mean when it's undefined? We need to figure that out. And it figured that out as 16. In this case, the definition of minor is given to us by statute. It's also a different term. Esquivel-Quintana was dealing with a different term. But abuse can't just mean sex with minors, because the statute already covers sex with minors. In the other words, sexual minor. So it just can't mean that. And the Quintana case indicates that you're dealing with abuse, you're dealing with 16. So, Your Honor, the Quintana didn't define the term abuse. It did not hold. And I believe my friend might have said something like this. I don't, neither this court nor the Supreme Court has held that conduct is not categorically abusive if the person is between. I'm just reading. Let me read it to you. What I'm reading this line. The generic federal definition of sexual abuse of a minor requires that the victim be younger than 16. Did I read that out of context? No, but it's a different term. The term we're looking at is abusive sexual conduct involving a minor. And the term minor is defined by statute in the context of that phrase. So although the phrases are similar, they have different definitions. And maybe that's why we're going around is I'm still coming back to the whole proposition that abuse can't just mean sex with minors. It means something else. It has to mean something where the use of the minor is improper, is misused. In other words, you have to get to it being abusive. You can be a minor, but it has to be abusive. And if you can give consent, that doesn't put it in the statutory rate. As Judge Stackle pointed out, consent is not a defense of statutory rate, but that deals with age. That means if you are under this age, you can't consent. But if you're over 16, you can. Your Honor, this court says we're dealing with a categorical statute, and in Tennessee, it goes up to 18. Your Honor, this court actually addressed something very similar in Colson. The only reason the conduct at issue in Colson is abusive is because of the age of the victim. It addresses a teenage girl, 17 years and 10 months old, proposing in a relatively sultry pose. That's the language from an actual case, exposing her breasts, consensually. The reason that conduct is abusive is because of the age of the person, and because that person is under the age of 18. This court held that- It's more than age. Isn't that more than age? When you're talking about an age-specific statute, it's just what Judge Stackle said. You can't give consent if you are under 16, or if you meet it within the statute. What you're talking about are the factors involved in that particular case, other than age alone. Well, there's factors other than age alone in statutory rape, too. You also have to have, in this case, sexual penetration of the minor. The person has to be several years older. Mr. Enright, consent is not a defense to the Tennessee statute we're talking about, is it? Consent is not a defense to the Tennessee statute. It was not a defense to the Tennessee statute. The reason it's abusive is because of the age. We want to stick with the Tennessee statute. That's why it's the 18. That's the big deal here. What I understand the question is that consent, you can be 17 years old. That will not be a defense under the Tennessee statute. Under federal law, because consent can be given by children over 16, it would be a defense. Your Honor, I just want to make sure I understand. There is a federal statutory rape law that governs rape on federal enclaves, for example. That's 18 U.S.C. 2243. I'm only getting it for the Quantana case, and that is the question of the abusiveness. The abusiveness that you seem to want to read out of Quantana, though it did not say that, but it says it pretty specifically with regard to 16-year-olds. I don't know that I have a lot more to offer, Your Honor, other than what Quantana says. I can probably find a quote from it, but it's looking at the definition of the term minor. It starts with a dictionary definition. Sexual abuse, it's quoting the Merriam-Webster Dictionary of Law. It says sexual abuse includes the engaging in sexual contact with a person who is below a specified age. Then it says the specified age is that of a minor. What does that mean? It means someone who is 16. In the statute before the court today, the term minor is defined by statute. Even if there are other ways to define it, or that's not the ordinary meaning, Congress is free to choose a meaning that's not ordinary. In this case, it chose a meaning that several states adhere to. They don't even have particularly anything in common. Delaware, Virginia, Tennessee, California, all of them apply a statutory age of 18 for statutory rape. So we're not talking about a statute that's an outlier or something that's extraordinarily unusual. I do want to address the point that this statute requires only that it relate to it. That's broad. It can be broader than a match with abusive sexual conduct involving a minor. That's significant. This court held as much in Colson. If the court has no further questions about that, or feel free to return to it, I do want to turn to the conditions of supervised release because I think the district court appropriately addressed them. There's basically two categories of supervised release conditions here. Two of them are the ones this court held were particularly exacting or onerous, required a little more scrutiny, in McMiller, requiring a probation officer's approval to have internet-connected devices or use social networking accounts. The court addressed those in detail. It went through the standard, acknowledging that it requires they be no more restrictive than reasonably necessary. It went over the defense. We also require an individualized explanation of why even conditions in a district court standing order are being imposed to this particular defendant. Where do you find that in this record? The court did not go through every single one that's being addressed. It doesn't have to. Your point is well taken, I think, at one point. It did, but the court also said, I've considered the statutory factors, I've considered your arguments, and I believe this is appropriate. It, of course, said that before the defendant brought up the conditions of supervised release at the hearing. The court said more than defense counsel wanted to say. Defense counsel said, I just want to rest on the record. It was the And what he said, and what I think, what I understand him to say even in his briefs on appeal is, well, the thesis was he really doesn't pose a danger to strange children today. And the court rejected that somewhat cursorily, but appropriately so. It adopted the facts in the pre-sentence report showing that not only did he commit statutory rape, commit six assaults in the intervening years, and then download and collect child pornography when he saw a picture of a five-year-old girl. No, yeah, I can understand. Yeah, that's, I can understand the reasons the court would have imposed these conditions for all the reasons you're about to give. But the court didn't actually say that anywhere. So your argument is because he adopted the pre-sentence, because the district court adopted the pre-sentence report and because the district court said it considered, just said it considered all the 35-53A factors, that that's enough. The court doesn't have to say what you're about to say, that the facts here indicate that you did use the computer, that this, you didn't say I don't want a real kid. It's a five-year-old that's actually being abused. So this is why it weren't, and the court didn't say that. So shouldn't the court be required to at least provide the individualized explanation that you certainly would be able to give? So I'm not, I'm not saying that the, that that is enough in every case, but I think it is in this particular case because this court looks at the record as a whole. And frankly, it's fairly obvious why somebody who has this kind of history that includes both hands-on contact with children and the exploitation of children using social media and using, using internet-connected devices requires this extra measure of caution. All of these conditions are, require the, but counsel, if I may, I look, I, I think I have a similar view. I mean, I don't think it would be difficult for our court to adequately explain the basis of those conditions in this case. It seems though that you, Ian, are, are, you know, taking a pretty narrow view of what we said in McMiller. And, and, and I'm just trying to make sure how square what you're saying with that case. It almost seems like if the record as a whole is clear that it would be justified, then we don't really have to do what McMiller says. And whether you, anyway, if you could go ahead. Sure, your honor. I don't think it's, it's, I don't think, I'm not saying that if the record's clear, they would be justified as enough. I think that's what McMiller rejected. What I'm saying is if the record is clear enough, why those conditions imposed and why the court felt that less restrictive conditions wouldn't cut it, which the court did specifically explain, then I don't think the court needs to say more. I would note that this court has, despite what my friend has said in published opinions, Boulware is one, Lynn is another one, said that an explanation of an offense or an inadequate explanation can be a harmless error. And here the district court made clear it understood the standard, it understood the arguments, and it didn't find them persuasive. So what you would have is a harmless error because it's clear the court would impose those same conditions if it had to do it over again. And so for that reason, even if your honors disagree with me about the adequacy of the explanation, I'll ask that the court affirm the judgment of the district court, and I'll yield the one second I have left. All right, Mr. Carpenter, I hope you've gotten your technology back up so you can speak to us in your, with your five minutes. Well, we're going to try. Can you hear me okay now? You are much better. Proceed. Okay, so I was told that we had network issues, and so I went to the website, which will hopefully help. That's great. Okay, so the first point I want to respond to is with respect to the Jaycox case. My friend mentioned his view that the Ninth Circuit is just applying an entirely different standard than what this court adopted in Colson, and so I would urge the court to take a look at the Jaycox case, and specifically, pen site to page 10, 1070, I believe it is, in 1071, where it cites the exact same language in about the broadening of it, and that is language that the Ninth Circuit has relied on since the Cenarius case, which predated Colson and was cited in Colson. All of these cases cite the Morales case from the Supreme Court, which is where the some relation language comes from. So the Ninth Circuit has applied that standard for 15 years now, including in the Jaycox and Sullivan cases, and held that it excludes offenses like the one here. The second point I would make, Judge Quattlebaum asked the question of if the government's interpretation would cover every statutory rape offense, would that be a problem? And I think it would, and I would point to Judge Wilkinson in the Ron Halkastaneda case at page 377, where he says, if we do not have a uniform federal definition, then, quote, conduct that is perfectly legal for some people could subject many others in neighboring states to years upon years in federal prison. That's an enormous problem with the government's interpretation of this statute, is that it creates giant disparities depending on geography. How do you respond to the government's argument that Quintana was really just about collaborating on a meaning minor, not about sexual abuse of a minor? Your Honor, I just don't think it can be squared with the way the Supreme Court explains its in saying that conduct can be considered abusive only in this context. If it's based on the age of the participants, then 16 is where the line is, generically, and in other contexts, it may be 18. Certainly, in the context of the creation of child pornography, everyone, every state that I'm different than the one here, because in that case, the harm isn't the conduct. The harm is the creation of the image that can be circulated. It's just a materially different harm than that covered by a private sexual activity. The other point I would make with respect to Judge Thacker's question about consent not being a defense. I think that is exactly why this statute does not satisfy the Diaz-Ibarra misuse or maltreatment standard that the court has long adopted. I would point out, my colleague, I believe, he may have misspoken, but he suggested that abusive sexual conduct involving a minor might have a different definition than sexual abuse of a minor, but that would be inconsistent with this court's decision in Colson, which specifically incorporates the Diaz-Ibarra definition in interpreting 2252. I think if you apply a misuse or maltreatment standard, then consensual activity of this nature doesn't qualify as abusive. I would again point to Judge Wilkinson's analysis in Ron Helcastaneda, which addresses the generic definition of statutory sexual abuse of a minor, and Judge Wilkinson says there that it would be discordant to say that in one context this activity is consensual under the generic definition, but to say in a different context that it is, quote, criminally abusive. I think that same discordant outcome would occur here if the court splits with the Ninth Circuit and covers this offense under 2252. What about his harmless error argument on the limited explanation of the conditions of supervised release? Sure. So on that, Your Honor, the standard that this court has applied, I know the counsel cited a couple of cases from a decade ago in a different context. I would look at the more recent ones. For example, the Ross case, which says that so long as it's, quote, conceivable that the overlooked arguments that a remand is appropriate, and I would also emphasize here that the central thesis was simply never addressed. He argued that if you look at the category of sex offenders, he is among the least culpable of them because his, you know, the only, quote, unquote, contact offense that occurred was 25 years ago when he was 18 and the other folks were 14, and so that is quite different than you see in many of these cases. There has since that time been no contact offenses, nothing in real life, all of this. No convictions. Right. Well, right, and so I think that's all I have on that particular question. So if there are no others, I would thank the court and apologize for the tech issues. Yes, I would say that in the five minutes. So, Mr. Mr. Carpenter, Mr. Enright, you are both excellent lawyers. I think I can speak for the court and say that we've enjoyed your arguments, and thank you for taking the time to be here to present your cases, which you've done very well. As I said in the previous case, normally you know that this court is the unique court that comes down and shake your hands as a matter of courtesy. We've done that for decades, and in this instance, we'll ask that you accept our virtual handshakes, and we are thankful that you've been with us. So with that, we will close court and adjourn until tomorrow. Thank you, Your Honor. Appreciate it very much. Good to see you, Josh. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: James A. Wynn Jr., Stephanie D. Thacker, A. Marvin Quattlebaum Jr.